## O'DONNELL v. GREAT LAKES DREDGE & DOCK CO.

No. 320. Argued January 6, 1943.—Decided February 1, 1943.

*Mr. Walter F. Dodd* for petitioner.

*Mr. Ezra L. D'Isa* for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question for decision is whether a seaman injured on shore while in the service of his vessel is entitled to recover for his injuries in a suit brought against his em-

ployer under the Jones Act. § 33, Merchant Marine Act of 1920, 41 Stat. 1007, 46 U. S. C. § 688.

Petitioner was a deckhand on respondent's vessel "Michigan," engaged in transporting sand from Indiana to Illinois over the navigable waters of Lake Michigan. As her cargo was being discharged through a conduit passing from the hatch and connected at its outer end to a land pipe by means of a gasket, petitioner was ordered by the master to go ashore to assist in repair of the gasket connection. While he was so engaged the alleged negligence of a fellow employee caused a heavy counterweight, used to support the gasket, to fall on petitioner and cause the injuries of which he complains. The district court dismissed the cause of action under the Jones Act and granted an award for wages. The Court of Appeals for the Seventh Circuit modified the judgment, 127 F. 2d 901, by allowing an additional award for maintenance and cure, but held that no recovery could be had under the Jones Act for injury to a seaman not occurring on navigable waters. We granted certiorari, 317 U. S. 611, the question being one of importance in the application of the Jones Act.

The Jones Act, so far as presently relevant, provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . ."

The Act thus made applicable to seamen injured in the course of their employment the provisions of the Federal Employers Liability Act, 45 U. S. C. §§ 51–60, which gives to railroad employees a right of recovery for injuries resulting from the negligence of their employer, its agents

or employees. *Panama R. Co.* v. *Johnson,* 264 U. S. 375; *The Arizona* v. *Anelich,* 298 U. S. 110. The term "seamen" has been interpreted to embrace those employed on a vessel in rendering the services customarily performed by seamen, including stevedores while temporarily engaged in stowing cargo on the vessel. *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50; *Buzynski* v. *Luckenbach S. S. Co.,* 277 U. S. 226. There is nothing in the legislative history of the Jones Act to indicate that its words "in the course of his employment" do not mean what they say or that they were intended to be restricted to injuries occurring on navigable waters. On the contrary it seems plain that in taking over the principles of recovery already established for railroad employees and extending them in the new admiralty setting (see *The Arizona* v. *Anelich, supra*) to any seaman injured "in the course of his employment," Congress, in the absence of any indication of a different purpose, must be taken to have intended to make them applicable so far as the words and the Constitution permit, and to have given to them the full support of all the constitutional power it possessed. Hence the Act allows the recovery sought unless the Constitution forbids it.

The constitutional authority of Congress to provide such a remedy for seamen derives from its authority to regulate commerce, *Second Employers' Liability Cases,* 223 U. S. 1, and its power to make laws which shall be necessary and proper to carry into execution powers vested by the Constitution in the government or any department of it, Article I, § 8, cl. 18, including the judicial power which, by Article III, § 2, extends "to all Cases of admiralty and maritime Jurisdiction." By § 9 of the Judiciary Act of 1789, 1 Stat. 76, 28 U. S. C. § 371 (Third), Congress conferred on the district courts "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases, the right of a common

law remedy where the common law is competent to give it . . ." By the grant of admiralty and maritime jurisdiction in the Judiciary Article, and § 9 of the Judiciary Act, the national government took over the traditional body of rules, precepts and practices known to lawyers and legislators as the maritime law, so far as the courts invested with admiralty jurisdiction should accept and apply them. *Waring* v. *Clarke*, 5 How. 441, 459; *The Lottawanna*, 21 Wall. 558, 576; *In re Garnett*, 141 U. S. 1, 14; *Detroit Trust Co.* v. *The Barlum*, 293 U. S. 21, 43, and cases cited.

It is true that the jurisdiction in admiralty in cases of tort or collision is in general limited to events occurring on navigable waters, *Waring* v. *Clarke, supra;* cf. *The Blackheath*, 195 U. S. 361, and that the maritime law gave to seamen no right to recover compensatory damages for injuries suffered from negligence. *The Osceola*, 189 U. S. 158, 172, 175; *Pacific S. S. Co.* v. *Peterson*, 278 U. S. 130, 134. It allowed such recovery if the injury resulted from unseaworthiness of the vessel or her tackle, *The Osceola, supra,* 173, 175, and permitted recovery of maintenance and cure, ordinarily measured by wages and the cost of reasonable medical care, if the seaman was injured or disabled in the course of his employment. *The Osceola, supra,* 172–75; *The Iroquois*, 194 U. S. 240; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 527–28.

But it cannot be supposed that the framers of the Constitution contemplated that the maritime law should forever remain unaltered by legislation, *The Lottawanna, supra,* 577, or that Congress could never change the status under the maritime law of seamen, who are peculiarly the wards of admiralty, or was powerless to enlarge or modify any remedy afforded to them within the scope of the admiralty jurisdiction. There is nothing in that grant of jurisdiction—which sanctioned our adoption of the system of maritime law—to preclude Congress from modifying

or supplementing the rules of that law as experience or changing conditions may require. This is so at least with respect to those matters which traditionally have been within the cognizance of admiralty courts either because they are events occurring on navigable waters, see *Waring* v. *Clarke, supra,* or because they are the subject matter of maritime contracts or relate to maritime services. *Insurance Company* v. *Dunham,* 11 Wall. 1, 25.

From the beginning this Court has sustained legislative changes of the maritime law within those limits. See *Waring* v. *Clarke, supra; The Lottawanna, supra; Butler* v. *Boston & Savannah S. S. Co.,* 130 U. S. 527, 555. Congress has both limited the liability of vessels for their torts even though not engaged in interstate commerce, *In re Garnett, supra; Hartford Accident & Indemnity Co.* v. *Southern Pacific Co.,* 273 U. S. 207, 214, and extended the limitation to claims for damages by vessel to a land structure. Compare *The Plymouth,* 3 Wall. 20, and *Cleveland Terminal & V. R. Co.* v. *Cleveland S. S. Co.,* 208 U. S. 316, with *Richardson* v. *Harmon,* 222 U. S. 96, 101, 106. It has altered and extended the maritime law of liens on vessels plying navigable waters. *Detroit Trust Co.* v. *The Barlum, supra,* and cases cited. And the Jones Act itself has given seamen a right of recovery for injury or death, not previously recognized by the maritime law, which has been uniformly sustained by this Court in cases where the injury occurred on navigable waters. *Panama R. Co.* v. *Johnson, supra,* 385–87; *The Arizona* v. *Anelich, supra; Lindgren* v. *United States,* 281 U. S. 38.

As we have said, the maritime law, as recognized in the federal courts, has not in general allowed recovery for personal injuries occurring on land. But there is an important exception to this generalization in the case of maintenance and cure. From its dawn, the maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to his

vessel, whether occurring on sea or on land. It is so stated in Article VI of the Laws of Oleron, twelfth century, 30 Fed. Cas. 1174, and in Article XVIII of the Laws of Wisbuy, thirteenth century, *id.* p. 1191. And see Article XXXIX of the Laws of the Hanse Towns, *id.* p. 1200; Articles XI and XII of Title Fourth, Marine Ordinances of Louis XIV, *id.* p. 1209. Such is the accepted rule in this Court, see *The Osceola, supra,* 169, 175; *Calmar S. S. Corp.* v. *Taylor, supra,* 527–28, and it is confirmed by Article 2 of the Shipowners' Liability Convention of 1936, 54 Stat. 1695, proclaimed by the President to be effective as to the United States and its citizens as of October 29, 1939. Article 12 of the Convention provides that it shall not affect any national law ensuring "more favourable conditions than those provided by this Convention." 54 Stat. 1700.

Some of the grounds for recovery of maintenance and cure would, in modern terminology, be classified as torts. But the seaman's right was firmly established in the maritime law long before recognition of the distinction between tort and contract. In its origin, maintenance and cure must be taken as an incident to the status of the seaman in the employment of his ship. See *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367, 372. That status has from the beginning been peculiarly within the province of the maritime law, see *Calmar S. S. Corp.* v. *Taylor, supra,* and upon principles consistently followed by this Court it is subject to the power of Congress to modify the conditions and extent of the remedy afforded by the maritime law to seamen injured while engaged in a maritime service.

The right of recovery in the Jones Act is given to the seaman as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the

vessel plying in navigable waters. See *Waring* v. *Clarke, supra; Insurance Co.* v. *Dunham, supra.*

It follows that the Jones Act, in extending a right of recovery to the seaman injured while in the service of his vessel by negligence, has done no more than supplement the remedy of maintenance and cure for injuries suffered by the seaman, whether on land or sea, by giving to him the indemnity which the maritime law afforded to a seaman injured in consequence of the unseaworthiness of the vessel or its tackle. *Pacific S. S. Co.* v. *Peterson, supra.* Since the subject matter, the seaman's right to compensation for injuries received in the course of his employment, is one traditionally cognizable in admiralty, the Jones Act, by enlarging the remedy, did not go beyond modification of substantive rules of the maritime law well within the scope of the admiralty jurisdiction whether the vessel, plying navigable waters, be engaged in interstate commerce or not. Cf. *Jackson* v. *The Magnolia,* 20 How. 296; *The Belfast,* 7 Wall. 624, 640, *et seq; In re Garnett, supra.*

The fact that Congress has provided that suits under the Jones Act may be tried by jury, on the law rather than on the admiralty side of the federal courts, does not militate against the conclusion we have reached. This is but a part of the general power of Congress to prescribe the forum in which federally-created causes of action are to be tried, *Claflin* v. *Houseman,* 93 U. S. 130, 136–42,—a concomitant of the power many times sustained by this Court to direct that causes of action arising under the Jones Act may be tried in the state courts. E. g., *Engel* v. *Davenport,* 271 U. S. 33, 37–38; *Panama R. Co.* v. *Vasquez,* 271 U. S. 557; cf. *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239.

We have no occasion to consider or decide here the question whether a longshoreman, temporarily employed in storing cargo on a vessel, if entitled to recover under the

44

Jones Act for injuries sustained while working on the vessel (compare *International Stevedoring Co.* v. *Haverty, supra,* with *Nogueira* v. *N. Y., N. H. & H. R. Co.,* 281 U. S. 128, 137), could recover for an injury received on shore in the circumstances of this case. Compare *State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S. 263, with *South Chicago Co.* v. *Bassett,* 309 U. S. 251, 256.

*Reversed.*