## MARCEAU v. GREAT LAKES TRANSIT CORPORATION.

### No. 151.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1945.

---

[6] Emphasis supplied.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

Ulysses S. Thomas, of Buffalo, N. Y., and Russell V. Bleecker, of Cleveland, Ohio (Russell V. Bleecker, of Cleveland, Ohio, of counsel), for appellant Great Lakes Transit Corporation.

Desmond & Drury, of Buffalo, N. Y. (John E. Drury, Jr., of Buffalo, N. Y., of counsel), for appellee Alfred G. Marceau.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, a second cook and member of the crew on the Steamer Alfred E. Smith, belonging to the defendant, Great Lakes Transit Corporation, brought this action under the Jones Act to recover for personal injuries suffered in the course of his employment because of the alleged negligence of the defendant.

The vessel was moored at a dock in Buffalo Harbor which had been leased to the defendant. The plaintiff left the vessel on shore leave on November 8, 1940, at about 7:30 or 8 P. M. in order to go ashore for personal business or recreation. He had been ordered to return at 11:30 to provide the night lunch. On his return he walked up the dock toward the boat and approached a ladder belonging to the ship which ran from the dock to the deck and was a recognized mode of ingress to and egress from the vessel for the crew. When within about three to five feet from the foot of the ladder, he slipped and fell, straddling the upright of the ladder, which caught him in the crotch. In the fall he landed on the small of his back upon a cleat extending out on the dock and sustained the direct and consequential injuries for which he sues. He testified that a pile of flour or meal had been deposited near the foot of the ladder, had become wet from the rain or snow that was falling and had then been sprinkled with sawdust by someone so that it should not be slippery. He also testified that when he returned there were no lamps lighted in the area of the ladder.

Stevedores had been loading a cargo of flour on the ship earlier in the day, and

when the plaintiff returned just before midnight they were loading it through bow or No. 1 gangway, which was some 150 feet from the spot where the ladder rested and the pile of flour was found. Some of the other gangways had been used to load cargo during earlier hours and the boat had been shifted since the plaintiff went ashore. He said that it was the practice to sweep any flour or debris which had accumulated through the gangway and upon the dock. In this way the presence of the slippery pile of debris near the foot of the ladder might be accounted for, though no witness testified to seeing when or by whom it was placed there and it was not opposite the entrance of any gangway at the time the plaintiff returned to the vessel; for, if the plaintiff's evidence be believed, the jury could reasonably find that the debris had been swept on the dock through a gangway which earlier in the day was opposite the place where the ladder stood and where the plaintiff slipped and fell, but later, owing to the moving of the boat, was opposite a different part of the dock. This was the effect of Marceau's testimony, for when asked to explain the presence of the debris at the foot of the ladder, which at the time he approached it was not near any gangway but half-way between the third and fourth gangways, he said: "Well, * * * when they are loading, they often-times shift the boat, which in this occasion * * * had been shifted. The boat was not in the same condition when I came back as it was when I left."

The court submitted to the jury two questions, whether the defendant was negligent (1) in causing or permitting the condition at the foot of the ladder to exist, and (2) in failing to provide proper lights so that the plaintiff could proceed safely when about to ascend the ladder.

The defendant argues that the court was without jurisdiction of the suit because: (1) The plaintiff had sought and received a compensation award from the Industrial Board of the State of New York; (2) the plaintiff was not injured while in the course of his employment; (3) The Jones Act did not extend to accidents which did not happen on navigable waters but on land, that is, on the dock.

■ The first contention cannot be sustained. The award for workmen's compensation is on appeal and it does not appear that any payments on account of it were made. If the action under the Jones Act is one of which the District Court acquired jurisdiction, as we hold to have been the case, there is no basis for invoking any doctrine of election of remedies, and nothing has occurred in the way of an accord or satisfaction. Brassel v. Electric Welding Co., 239 N.Y. 78, 145 N.E. 745; Doey v. Clarence Howland Co., 224 N.Y. 30, 120 N.E. 53.

■ The defendant's other two contentions are likewise without merit. The plaintiff was acting under orders when he returned to the ship. Consequently at the time of the accident he was not only acting in the course of his employment but suffered his injuries while on property in the possession and under the control of the defendant as lessee and over which the plaintiff had to pass in order to return to his work. Under the decisions a man is acting in the course of his employment when coming to or returning from work, and upon the employer's premises or upon adjacent property if approaching by a customary route. Wong Bar v. Suburban Petroleum Transport, 2 Cir., 119 F.2d 745. In Erie R. R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057, Ann.Cas.1918B, 662, the Supreme Court held that a railroad employee was engaged in interstate commerce and could recover for injuries sustained through the negligence of the railroad when incurred while leaving his work for the day and passing through the freight yard of the railroad. See to the same effect; Virginian Ry. Co. v. Early, 4 Cir., 130 F.2d 548; Young v. New York N. H. & H. R. R. Co., 2 Cir., 74 F.2d 251, at page 252: Atlantic Coast Line Ry. Co. v. Williams, 5 Cir., 284 F. 262. In Cudahy Packing Co. v. Parramore, 263 U.S. 418, 426, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532, the Supreme Court allowed an employee to recover workman's compensation for injuries suffered as in the course of his employment when he necessarily was going to his employer's factory and was killed by a locomotive on a railroad adjacent to the plant. See also Bountiful Brick Co. v. Giles, 276 U.S. 154, 158, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402. The recent decision of the Supreme Court in O'Donnell v. Great Lakes Co., 318 U.S. 36, 63 S.Ct. 488, 492, 87 L.Ed. 596, extends the protection of the Jones Act to seamen who are injured through the negligence of their employers while acting in the course of their employment even though the injuries occur on land. Chief Justice Stone, writing for the court, said: "The right of recovery in the Jones Act is given to the sea-

man as such, and, as in the case of maintenance and cure, the admiralty jurisdiction over the suit depends not on the place where the injury is inflicted but on the nature of the service and its relationship to the operation of the vessel plying in navigable waters."

But the defendant argues that the Jones Act, 46 U.S.C.A. § 688, did not become applicable to injuries suffered by seamen when on shore until after the decision of the Supreme Court in O'Donnell v. Great Lakes, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, supra, which was rendered long after the plaintiff's accident. The contention is based on the unsound notion that the decision, if it gave a new interpretation as to the extent of the remedies available to seamen under the Jones Act, was in effect like a statutory amendment of the Act. But the action is in tort, there was no abridgement by judicial decision of the contract rights of the parties even if an alteration of their rights by reason of such a decision would be forbidden. We know of no precedent for holding that a failure to adhere to a former judicial limitation of claims to recover damages for negligence is an unlawful impairment of existing rights. The decision of the Supreme Court in O'Donnell v. Great Lakes, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, supra, must be regarded as no more than a declaration of what was the law from the date the Jones Act took effect.

The difficulties in the present case are because of the confusion resulting from conflicting rulings made by the trial judge and his refusal when requested by the defendant to charge "as to the length of time impediments must be on the property and the liability for not having sufficient time to clean them up." He charged that if the plaintiff "fell on the dock and if he did not fall in attempting to ascend the ladder, then he has not sustained his cause of action * * *" (fol. 925), and apparently thought that a claim for failure to provide a safe approach to the ladder could not be asserted under the Jones Act because it would involve a non-maritime tort. Later (at fol. 952) the defendant requested the judge to charge that "a vessel owner is not liable for failure to provide a safe place to work in the property adjacent to the vessel for a seaman returning to the ship on a visit ashore on his own personal business", and the judge charged that there was no liability for negligence under such circumstances. Yet, following this, the defendant requested the judge to charge that "a vessel owner is not liable for failure to provide a safe place to work in the property adjacent to the vessel for a seaman returning to the ship on a visit ashore on his own personal business", and the judge refused, saying: "I think it is too broad. 'Adjacent' I don't know just what is meant." But later, the court said: "I charge with qualification, of course, if this accident occurred as claimed by him at the ladder, the Company's ladder, if the accident occurred at that place, that he is entitled to recover."

The instructions were evidently confused because the judge at first mistook the effect of the decision in O'Donnell v. Great Lakes, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, supra, and erroneously believed that there was evidence that the plaintiff slipped and fell when on the ladder and could not recover if he only slipped and fell when on the dock. But, so far as these instructions were erroneous, they were in favor of the defendant who, therefore, cannot complain.

Finally, we think that the refusal to charge about the length of time required to justify an inference that the defendant had notice of the presence of the pile of slippery flour at the foot of the ladder was justified. If, as the jury might infer, the boat was shifted between the time the plaintiff left it in the early evening and his return shortly before midnight, the defendant must or should have known of the conditions on the dock. The pile of rubbish had evidently been swept through one of the gangways and deposited on the dock before the vessel was moved because, when Marceau returned, it was not opposite the entrance to any gangway. Whether the shifting occurred a short or long time before midnight it is certainly to be assumed that the ladder was placed where it was by or on behalf of the shipowner after the shifting was completed and that the shipowner must have known what the surroundings of the ladder were before installing it or allowing it to be installed. The plaintiff accordingly made out a prima facie case by furnishing evidence of a slippery and ill-lighted place on the dock which he had to traverse in order to ascend the ladder upon returning to work. We think that it was for the defendant to show that it had no opportunity to ascertain conditions before the accident occurred and it made no attempt to make such a showing. In-

420

structions as to the time necessary to clean up the dock were not pertinent where, as here, the dangerous conditions were brought about by the defendant's neglect in removing the debris from proximity to the ladder when the ladder was placed near the pile of debris, after the vessel was shifted. Moreover, the question as to failure to instruct the jury about the length of time necessary to justify an inference of notice of the pile of slippery flour, while raised at the trial, is not mentioned in the appellant's brief on appeal and seems to be no longer relied on.

Judgment affirmed.