**Byron GIZONI, Plaintiff–Appellant,**

v.

**SOUTHWEST MARINE INCORPORATED, Defendant–Appellee.**

**No. 93–56715.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted January 3, 1995.

Decided June 7, 1995.

**1140**

Preston Easley, San Pedro, CA, for plaintiff-appellant.

Gregory A. Post, Post, Kirby, Noonan & Sweat, San Diego, CA, for defendant-appellee.

Before: CANBY and LEAVY, Circuit Judges, and PRICE,* District Judge.

CANBY, Circuit Judge.

Byron Gizoni appeals after a jury trial in which the jury found that he was not a "seaman" under the Jones Act, 46 App. U.S.C. § 688. Gizoni argues that the trial court erred in instructing the jury on the definition of "seaman." We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand.

# I

## FACTS

Byron Gizoni worked for Southwest Marine as a shore-based rigger and rigging-foreman. He was allegedly injured when he stepped into a hole in the deck of a pontoon barge owned by his employer. At the time of the accident, the floating work-platform (or barge) was secured to the end of a floating dry-dock in which a naval vessel was being repaired in Southwest's shipyard. The barge was being used to help repair the rudder of a U.S. Navy Ship.[1]

Gizoni sued Southwest Marine under the Jones Act, 46 App.U.S.C. § 688, alleging that he was a seaman because of his work aboard various barges and watercraft owned by Southwest Marine. The Jones Act provides a cause of action in negligence for any "seaman" injured "in the course of his employ-

---

* Honorable E. Dean Price, Senior United States District Judge for the Eastern District of California, sitting by designation.

1. In an earlier opinion we indicated that "Gizoni was injured when his foot broke through a thin wooden sheet covering a hole in the deck of a platform being used to transport a rudder from the shipyard to a floating dry-dock." *Gizoni v. Southwest Marine, Inc.*, 909 F.2d 385, 387 (9th Cir.1990), *aff'd* 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). It was later discovered that the platform had not yet been used to transport the rudder. This factual difference does not affect our earlier opinion or the opinion in this case.

ment," but does not define seaman. *Id.* The district court originally granted summary judgment in favor of Southwest because it found that Gizoni was not a "seaman" as a matter of law and that Gizoni was a harbor worker precluded from suing under the Jones Act. Gizoni appealed and we reversed, holding that Gizoni had raised a jury issue as to whether he was a "seaman," and that if he was a "seaman" he could recover under the Jones Act. *See Gizoni,* 909 F.2d at 389. The case then went to trial on the sole issue of whether Gizoni was a "seaman." The jury found that Gizoni was not a seaman.

Gizoni now appeals to this court, arguing that the district court erred in instructing the jury on the definition of "seaman."

## II

## ANALYSIS

■ In order to recover under the Jones Act, Gizoni must be a "seaman." *See Kathriner v. UNISEA, Inc.,* 975 F.2d 657, 659 (9th Cir.1992). To prove that he is a "seaman," Gizoni must show by a preponderance of the evidence: (1) that the vessel on which he was employed was in navigation, *Bullis v. Twentieth Century–Fox Film Corp.,* 474 F.2d 392, 393 (9th Cir.1973), (2) that he had a "more or less permanent connection with the vessel," *id.,* and (3) that his job contributed to the function or mission of the vessel. *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 355, 111 S.Ct. 807, 817–18, 112 L.Ed.2d 866 (1991).[2]

### A. The Fleet Doctrine

■ Gizoni contends that the district court erred by declining to instruct the jury on the fleet seaman doctrine.[3] Gizoni "is entitled to an instruction concerning his ... theory of the case if it is supported by law and has some foundation in the evidence."

**2.** The third element of the original Bullis test, which *McDermott* rejected, provided that the claimant must have been primarily aboard to engage in navigation. *See Kathriner v. UNISEA, Inc.,* 975 F.2d 657, 659 & n. 1 (9th Cir.1992).

**3.** Southwest maintains that Gizoni failed to preserve this issue for appeal. The record indicates otherwise. The court asked Gizoni's attorney

*Jenkins v. Union Pac. R. Co.,* 22 F.3d 206, 210 (9th Cir.1994).

■ The fleet doctrine, developed in the Fifth Circuit, aims at "eas[ing] the requirement that, to be a seaman, the claimant had to be 'assigned permanently to a vessel.' " *Stanfield v. Shellmaker, Inc.,* 869 F.2d 521, 525 (9th Cir.1989) (quoting *Braniff v. Jackson Ave.–Gretna Ferry, Inc.,* 280 F.2d 523, 526 (5th Cir.1960)). Under the fleet doctrine, one can acquire "seaman" status through permanent assignment to a group of vessels under common ownership or control. *See Braniff,* 280 F.2d at 528; *Campo v. Electro–Coal Transfer Corp.,* 970 F.2d 51, 52 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1261, 122 L.Ed.2d 659 (1993).

The district court refused to instruct the jury on the fleet doctrine because, according to the district court, whether Gizoni was attached to a group of vessels, as opposed to one vessel, was not an issue. Yet Gizoni presented evidence that he worked on a variety of barges and some of Southwest's other vessels, including Southwest's "pusher boat." Moreover, during closing arguments, Southwest's attorney vigorously argued that Gizoni could not prove that he was "more or less permanently attached" to the *particular* barge upon which he suffered his alleged injury.

■ Although we have never before explicitly adopted the fleet seaman doctrine, *see Stanfield,* 869 F.2d at 525, we agree with the Third Circuit that the fleet doctrine is a reasonable extension of Jones Act precedent. *See Reeves v. Mobile Dredging & Pumping Co.,* 26 F.3d 1247, 1256 (3d Cir.1994). Gizoni requested a fleet doctrine instruction and provided an evidentiary basis for such an instruction. By failing to instruct the jury on the fleet concept, therefore, the district court erred. *See Jenkins,* 22 F.3d at 210.[4]

"[n]ow, is there any other[ ] [jury instruction] ... that you have objections to?" Gizoni's attorney responded: ["[f]or the record, as you're aware I submitted a brief on the fleet concept...."]

**4.** Southwest maintains that the only time the fleet doctrine is appropriate is when the crafts in issue are indisputably vessels. We see no logical reason for such a limitation and Southwest has

Moreover, in light of Southwest's closing arguments, we cannot conclude that the error was more probably than not harmless.

## B. The Jury Instructions That Were Given

■ Gizoni also assigns error to the district court's formulation of the jury instructions. Because we remand for a new trial, we will address Gizoni's contentions regarding the jury instructions. *See United States v. Rodriguez,* 45 F.3d 302, 307 (9th Cir.1995). We review *de novo* whether the district court misstated the elements to be proved at trial. *Jenkins,* 22 F.3d at 210.[5]

### 1. Location of the Injury

■ The district court instructed the jury that Gizoni must prove "that the platform on which plaintiff was working at the time of the accident was a vessel in navigation." Gizoni argues that this instruction misled the jury into thinking that in order to be a seaman, Gizoni's injury must have occurred on a vessel. We agree with Gizoni that under the Jones Act, a seaman can recover for an injury incurred in the course of employment. *See O'Donnell v. Great Lakes Dredge & Dock Co.,* 318 U.S. 36, 38–39, 63 S.Ct. 488, 489–90, 87 L.Ed. 596 (1943). Whether the injury occurs on a vessel is irrelevant. *Id.* at 42–43, 63 S.Ct. at 491–92; *accord Yoash v. McLean Contracting Co., Inc.,* 907 F.2d 1481, 1486 (4th Cir.1990), *vacated on other grounds,* 498 U.S. 1117, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991); *see also* Thomas J. Schoenbaum, *Admiralty and Maritime Law,* § 3–7, at 93 (2d ed. 1994) ("a seaman may [make] . . . a claim against his employer, even for injuries on land").

We are not convinced, however, that the proffered instruction misled the jury in the manner suggested by Gizoni. Read in context, the instruction simply conveys that Gizoni must have been employed on a vessel in

navigation. This is not error. *See Bullis,* 474 F.2d at 393.

### 2. The Vessel Instruction

■ Gizoni also maintains that the district court erred in its vessel instruction. The district court stated in its vessel instruction, *inter alia,* that:

> If the transportation function, if any, of the floating platform was merely incidental to its other functions, the floating platform cannot be found to be a vessel. Further, to be a vessel, the purpose of the floating platform must, to some reasonable degree, be the transportation of passengers, cargo, or equipment from place to place across navigable waters.

In *Estate of Wenzel v. Seaward Marine Services, Inc.,* 709 F.2d 1326, 1328 (9th Cir. 1983), we reversed summary judgment because "[t]he fact that the [craft] was constructed for a purpose other than the transportation of persons or things from one place to another does not mean that as a matter of law, it is not a vessel in navigation." *Id.* The vessel instruction here ignores *Wenzel* by overstating the importance of the transportation purpose. Indeed the instruction suggests that the platform's purpose *must be* the transportation of passengers, cargo, or equipment from place to place across navigable waters. We have indicated before that unusual-looking crafts whose purpose is not the transportation of persons or things can be considered vessels under the Jones Act. *See id.* This instruction was, therefore, erroneous.

### 3. The Permanent Connection

■ Gizoni also argues that the district court erred in instructing the jury on the "more or less permanent connection" requirement. The court instructed the jury that:

> The second element of this test requires plaintiff to establish that he had a more or less permanent connection with the vessel

---

provided no authority for this contention. In our view, the fleet doctrine may be appropriate even if the status of the crafts is disputed.

5. We review challenges to the district court's formulation of the jury instructions for an abuse of discretion by determining whether the instruc-

tions, considered as a whole, were inadequate or misleading. *Jenkins,* 22 F.3d at 210. Because we reverse on other grounds, however, we only consider whether the instructions accurately stated the law.

which was substantial in terms of time and work, rather than sporadic, temporary, or incidental.

According to Gizoni, this instruction misled the jury into thinking that he was required to spend most of his time working on the barge.

The Supreme Court has made clear that "[t]he key to seaman status is employment-related connection to a vessel in navigation." *McDermott*, 498 U.S. at 355, 111 S.Ct. at 817. The purpose of the connection requirement is "to deny seaman's status to those who come aboard for an isolated piece of work, not to deprive a person [of] ... Jones Act status merely because he serves aboard a vessel for a relatively short time." Schoenbaum, *supra*, § 6–9, at 263 (citation omitted). Because "a necessary element of the connection [requirement] is that a seaman perform the work of a vessel," *McDermott*, 498 U.S. at 355, 111 S.Ct. at 817, we do not find the instruction, considered in context and in its entirety, misleading.

## III

### CONCLUSION

The district court abused its discretion by failing to instruct the jury on the fleet seaman doctrine. This error was not harmless. We therefore reverse the judgment and remand to the district court for a new trial.

**REVERSED** and **REMANDED.**